HOUSE (NORTH v.). See Case No. 10,310.

## Case No. 6,738.

### HOUSE v. YOUNG.

[3 Fish. Pat. Cas. 335.] [2]

Circuit Court, N. D. Ohio. Dec., 1867.

PATENT—INFRINGEMENT—REISSUE—DECISION OF COMMISSIONER.

1. Where the plaintiff put in evidence his letters patent. and the defendant, by way of defense, offered reissued letters patent for the same invention, bearing date after the patent of the plaintiff, but being a reissue of an original of earlier date than the plaintiff's patent: *Held* that, upon the face of the papers, the reissued letters patent related back to the date of the original, and the plaintiff could not recover.

[Cited in American Roll-Paper Co. v. Knopp, 44 Fed. 611.]

2. The legal presumption is that the invention as described in a reissued patent was made at the date of the original patent; and upon this point, the decision of the commissioner of patents is conclusive, unless fraud is shown.

This was one of several actions upon the case, tried, upon submission, by Judge SHERMAN, and brought to recover damages for the infringment of letters patent [No. 38,389] for "improvements in electric baths," granted to plaintiff [Mark W. House], May 5, 1863. The defendant [Jennie Young] claimed under letters patent for "improvement in electro-magnetic bathing apparatus," granted to her husband, James Young, May 14, 1861, and reissued June 28, 1864.

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Reported by Samuel S. Fisher, Esq., and here reprinted by permission.]

Ranney & Bolton, for plaintiff.
Willey & Cary, for defendant.

SHERMAN, District Judge. This is an action of trespass for the infringement of letters patent for new and useful improvements in the application of electro-magnetism to bathing tubs. The plaintiff introduces the letters patent to him, dated May 5, 1863, and there rests his cause. The introduction of the letters patent is prima facie evidence of a new and useful invention, and that the patentee is the first inventor.

The defendant rests her defense on the ground that her deceased husband, Dr. James Young, under whom she claims, was the first inventor, and relies, along with other evidence, upon a patent issued to Dr. Young, dated May 14, 1861, and a new patent reissued thereon, dated June 28, 1864.

If the defense relied only on the first patent of May, 1861, there would not be much difficulty in arriving at a conclusion. The specifications and claims are so defective and indefinite that it is almost impossible to understand them, and it is exceedingly doubtful whether an apparatus or machine could be constructed under them, that would in any manner be useful and practical, especially when it is contrasted with the ingenious and lucid statements of Dr. House's patent.

But it is claimed by the defendant that Dr. Young's reissued patent of June, 1864, relates back to the date of his first patent of May, 1861, and hence by that relation it covers the defects of that patent, and establishes that he was the first inventor.

That a reissued patent does relate back to the date of the original patent, is well established.

"In case of a surrender of a patent for a defect arising from inadvertence or mistake, and a reissue, the new patent and the proceeding on which it issues, have relation to the original transaction." Grant v. Raymond, 6 Pet. [31 U. S.] 244.

"Under section 13 of the act of 1836 [5 Stat. 122], a second patent with corrected specifications, has relation back to the emanation of the first patent, as fully, for every legal purpose, as to causes subsequently accruing, as if the second patent had been issued at the date of the first one." Stanley v. Whipple [Case No. 13,286].

"If a patent which was invalid by reason of defective specifications, is surrendered, and a new one taken out, the second patent relates back to the date of the original patent." Smith v. Pearce [Id. 13,089].

How far the court can go back of the reissue and determine whether it was properly reissued, or whether the reissue is not broader than the original patent, and covers a new invention, is a question often raised and as often decided.

The doctrine on this subject is thus stated in Curt. Pat. p. 277: "The question has been raised, how far the decision of the commissioner of patents upon the existence of a defect in the specification, arising from inadvertence, accident, or mistake, is reëxaminable elsewhere. It becomes important, when, in an action under the reissued patent, the defense is set up that the reissue is for a different invention from that described in the surrendered patent.

"Under the act of 1832 [4 Stat. 559], the supreme court held that the reissue of a patent by the commissioner was prima facie evidence that the proofs of defects required by the statute had been regularly furnished and were satisfactory. Subsequently, under the act of 1836, the same court seems to have considered the granting of the new patent as so far conclusive upon the question of the existence of error in the original patent, arising from inadvertency, accident, or mistake, that nothing remained open but the fairness of the transaction. That the question of fraud might be raised, but that unless the surrender and renewal were impeached by showing fraud, the reissue must be deemed conclusive proof that the case provided for by the statute existed."

The author to support his text cites [Philadelphia & T. R. Co. v. Stimpson] 14 Pet. [39 U. S.] 448, and Allen v. Blunt [Case No. 216].

In the case of Allen v. Blunt [supra], which was a case at law, after reciting section 13 of the act of 1836, under which the commissioner of patents is authorized to make reissues, Judge Story says:

"Now the specification may be defective or insufficient either by a mistake of law, as to what is required to be stated therein, in respect to the claim of the inventor, or by a mistake of fact, in omitting things which are indispensable to the completeness and exactness of the description of the invention, or the mode of construction, or making or using the same. Whether the invention claimed in the original patent, or that claimed in the new amended patent, is substantially the same, is and must be in many cases a matter of great nicety and difficulty to decide. It may involve considerations of fact as well as of law. Who is to decide the question? The true answer is, the commissioner of patents, for the law intrusts him with the authority, not only to accept the surrender, but to grant the new amended patent.

"No one can well doubt that in the first instance, therefore, he is bound to decide the whole law and facts arising under the application for the new patent. I very much doubt whether his decision is or can be reëxaminable in any other place or tribunal, unless his decision is impeached on account of gross fraud or connivance between him and the patentee, or unless his excess of authority is manifest on the very face of the papers. In other cases, it seems to me, that the law having entrusted him with the authority to ascertain the facts and to grant the patent, his decision, bona fide made, is

conclusive. It is like many other cases where the law has referred the decision to the sound discretion of a public officer, his decision becomes conclusive."

Again, in Potter v. Holland [Case No. 11,330], the court say: "The power and duty of granting a new patent for the original invention, when a lawful surrender of the old patent is made, are by law, expressly confided to the commissioner. The decision made by him in this case, is that the reissued patents are for the same invention originally discovered and intended by the patentee to be secured by the original patent. That decision the law has confided to his judgment. The court must take that decision as a lawful exercise of his authority. It is not reëxaminable here unless it is apparent upon the face of the patent that the commissioner has exceeded his authority, or unless there is a clear repugnancy between the old and new patents, or unless the new one has been obtained by collusion between the commissioner and the patentee."

It will be seen from these authorities, that the validity of the new or reissued patent can only be inquired into in three particulars:

First. Was there fraud and collusion between the commissioner and Dr. Young? This is not pretended or claimed.

Second. Is there apparent on the face of the patents an excess of authority on the part of the commissioner? This is said to be applied only to cases where there is a manifest difference in the character of the invention; for instance, when the first patent was for a chemical combination, and the reissue for a machine.

Third. Was there a clear repugnance between the new and the old patent?

As I understand this case, the matter of infringement claimed and proved is the use, by the defendant, of the movable metallic side electrodes of which the plaintiff claims to be the first inventor and patentee. By a recurrence to the first patent of Dr. Young, he claims in his specifications a side electrode. It is not set out and described as fully as in the specifications and claims of the reissued patent, or in Dr. House's patent. But he clearly intends to describe a side electrode. It is not movable or sliding. It is not metallic, but he mentions that their design and use is to pass currents through certain parts of the body of the patient. The reissued patent describes more particularly, and in more precise terms, the side electrodes, and that they are sliding on metallic rods. You may refine and reason very plausibly that they are two distinct inventions; but it seems to me that the idea of side electrodes, by which to pass the current through different parts of the body of the patient, was in the mind of Dr. Young, and intended by him in his specifications and claims for the first patent, and that by his reissued patent he used different language and methods to describe and carry out the same idea, and that these methods were not so radically different as to prevent the commissioner from making a reissue to him. At all events, there is not such a clear repugnancy between the old and new patents, in the language of the authorities, as to justify us in reversing, or even reviewing the decision of the commissioner.

I therefore hold that the reissue of Dr. Young's patent related back to his first patent, and that the decision of the commissioner of patents, in the reissue, is conclusive, and that this court can not go back of that decision. Therefore, the defendant is not guilty of the infringement of Dr. House's patent as complained.

This view of the case does not render void nor set aside all of Dr. House's patent. It contains many excellent and ingenious devices, highly creditable to him as an inventor, that are not named or claimed in Dr. Young's patent, and which, in connection with his double batteries and currents, and effective and scientific mode of conducting electricity into the bathing tub, render his invention highly useful, and, with the exception of the side electrodes, are not an infringement of Dr. Young's patent. Judgment for defendant.